17 0245 people of the state of Illinois at the lead by Mark Osto versus Veronica Dixon appellant by James Wozniak. Mr. Wozniak. Good morning, Your Honors. May it please the court, counsel. My name is James Wozniak with the State Appellate Defender's Office and I represent the defendant in this matter, Veronica Dixon. Before the jury retired to deliberate the guilt or innocence of Ms. Dixon, the court informed the jury that it would be receiving all tangible exhibits for it to review while it deliberated. And these tangible exhibits included a full recording of Ms. Dixon's interview with Detective Vazquez as well as an interview with a DCFS worker with Ms. Dixon. That interview with Detective Vazquez included a portion where asked Ms. Dixon how she would do on a lie detector test, where Ms. Dixon asked to be administered a lie detector test and where a DCFS worker discussed an abuse and neglect case involving Ms. Dixon's children. This nearly three hour recording was admitted into evidence that was not published to the jury during the trial. And this recording which contained this highly prejudicial information was then allowed to be viewed by the jury at their leisure. But what's prejudicial about the lie detector stuff? Well, what the Supreme Court said in GARD and the GARD case and other cases is that evidence of lie detector results in GARD is highly prejudicial. She never took a lie detector test? That's correct. Correct. There's nothing in the video that shows that there was a lie detector test administered and that there was any results. And wasn't there the colloquy between the defendant and the investigators on that very subject where she said she would pass the lie detector test because she maintains her innocence? Yes. Okay. So that was there as well? Correct. So we have no results? Correct. The detective says if you took a lie detector test, how'd you think you'd do? She would say she said pretty good. The detective said you think you'd pass? And she said, yeah, I'm not going to fail it because I got nothing to lie about. And then about 25 minutes after that, she said, I'll take that lie detector test or the exact words is give me a lie detector test. Well, there's other cases where the ICAF case from the fourth district and the Washington case, I believe it was from the first district where the court found that discussions about polygraph tests were prejudicial, even though there was no results. So on the ICAF test, a detective was offering a person to take a lie detector test. He said he didn't want to lie detector test. Well, that's different than offering to take a test as opposed to someone refusing to take a test. It is different. But what the ICAF court went on to say is that it's it's air when to introduce evidence where whether a defendant sought, declined or was offered a polygraph test. Who said that? This is the people for the, I'm gonna say ICAF. It's the fourth district. Who wrote it? Do you know? I do not. Well, as you know, we're not bound by those fourth district cases. This court could come to a different conclusion than ICAF, but I would... I agree. Now, was it subjected to when these, actually, CDs were proffered by the state? No. What occurred, they were entered in evidence during the state's rebuttal after the defendant had testified. What the prosecutor did was introduce this full three hour recording, which was Exhibit 10, and then a redacted portion, which was Exhibit 10A, which was just some portions with Detective Vasquez, nothing with the DCFS investigation. The prosecutor on the record says, we're going to play the redacted portion, said that the full interview was inadmissible, but both were admitted into evidence. 10A was the only one that was published. And then the court says before the jury deliberates that the jury is going to get all tangible objects, evidence, which would admit it. And we know that this is a jury that was reviewing everything it had. It deliberated for 10 hours. It asked for transcripts of multiple witnesses. It asked for, I believe it was Exhibit 9, which had been referenced during the trial, but actually not admitted. It wanted that. The court then said, well, that was not an admitted exhibit. There was also some Blu-ray CDs that contained a bunch of text and cell phone data on it. And the jury sent a question out saying, we can't play the Blu-ray. The player we have, we don't have the ability to play the Blu-ray disc. The court then says in the record, you know, there's a player back in the jury room that plays CDs and DVDs, but must not be able to play a Blu-ray disc. And then told the jury that the Blu-ray disc contained a volume of information that wasn't testified in at trial, so wasn't going to allow them to play the Blu-ray disc. The whole interview is around three hours. There are portions where Ms. Dixon's alone in the room. As the state points out in their brief, the discussion of the lie detector test totals around 30 seconds, a little less than 30 seconds. So in 10 hours of time, the jury  was asked to play the Blu-ray disc many, many times. And somebody, there's a reference in the record, and I don't know that when the state submitted that video, the one that was not published to the jury, that the envelope in which that video was contained was sealed. And they said it still appears to be sealed. Anything about that that doesn't look like it was ever opened? What I recall from the record is the detective identifies the envelope that these CDs are contained in and his notations on it and what it contains that are meant to evidence. I don't recall the actual discussion of the condition of the envelope. Do we know for certain that that exhibit actually went back to the jury room, other than the judge's comment that all tens will exhibit? Other than the comment from the judge saying that everything's going to go back, there's no reference at all, again, to that recording. But, again, and it's an inference. We have to make a judgment based on what the jury may have watched. And here, I think this jury, again, is a very active jury. They are continually asking for transcripts. They're continually asking to watch things. The 10A that was published is this redacted portion, and it's six very short clips. And it's obvious that it's spliced from a whole interview. I would think, based on the amount of questions and the questions the jury wanted to see, is that a logical question would be if they did not have the full interview would have been can we see the full interview with Detective Vasquez because all we see is this spliced redacted one. They never asked a question. Well, they saw the spliced redacted one in the course of the trial. Correct. Correct. That was published. Correct. And I think the prejudice is heightened when the jury gets to see both the full interview and the redacted portion. The question where we're going is we don't have any evidence that they even received that full one. Is that correct? I think we have to go with what the record we have, and the record is that this exhibit was admitted in evidence. I would argue that the statement by the trial judge would allow us to infer that that full exhibit 10 went back to the jury room. Yes, because the judge said that all exhibits, all tangible objects, are going to go back into the jury room. It makes no qualification that exhibit 10 is not going to go back. There's no discussion later on that. But you're not taking the position that because exhibit 10 was not quote published during the trial to the jury that they should not have been allowed to see it. You're not taking that before me. Had it been published to the jury and shown to the jury, I would be making the same arguments that the lie detector information, the interview with the DCFS was prejudicial and was error and should result in her conviction being reversed. So regardless if it was published during the trial, I think it's worse the way it's happened here because now the jury has no limiting instructions. There was no argument. There was no discussion about any of these discussions about the lie detector or the DCFS. Well, the defendant had an attorney, right? Yes. And the attorney presumably was aware of the contents of exhibit 10. I would make this assumption that it was given instruction. It was introduced to the attorney before trial. Yes. Okay, and so the objection, would we find that in a record by the attorney about the admission of exhibit 10? There was no objection to exhibit 10 being admitted. The state then says we're going to play the redacted portion, 10A, and then said that the full interview is inadmissible, yet 10 was admitted. And then based on what the judge said, I think that the only inference you can have from the record is that it went back to the jury. And, again, I think it's really important that this – we can't – obviously this jury's back and discussing whatever they're discussing for 10 hours. We don't know what the discussions were. We know that they reached an impasse for about nine hours. They sent out a question saying we're at an impasse, and that impasse is reasonable doubt. We don't think we can come to a unanimous jury verdict an hour later than that. So did the instruction get them? It was not. This was at the end of, I believe, the second day. It was in the evening. The judge seemed to take their question as that they wanted a definition of reasonable doubt. I don't think that was their specific question. And then I believe, if I recall from the facts, sent them home for the day. They came back the next morning, deliberated for around an hour, and then found Ms. Dixon guilty. And watching that video or watching that portion, that 30 or so seconds about the lie detector test, could have been the thing that tipped the jury finally into a unanimous guilty verdict. Let's talk about that for a second. First of all, do we know whether the police ever gave the defendant or scheduled a lie detector test? Did she ever give her a lie detector test? There's nothing in the record at all that she was administered a lie detector test. Because I'm thinking if I'm the defense trial attorney,  put me on the box, give me a lie detector test. I've got nothing to hide. That's a statement of an innocent person who says, you know, bring it on, let's go. I think, though, the inference, and again, the Eichhoff case talks about this, is that the inference can be that if a person is offered a lie detector test and doesn't take it, or here, there's a discussion about a lie detector test, and then the interview ends, the jury could be left to assume that she was offered a lie detector test or given a lie detector test later on, failed it, and thus was charged with the crimes. And I think the timing is important here, too. She's in the interview room for nearly two hours. She was arrested immediately after that interview. She was informed by Detective Vasquez. Before she even talked to the DCFS person, right? That's correct. She was under arrest. That's correct. So it seems clear from the record that she was arrested before. She wasn't arrested as a result of a lie detector test because there wasn't time to… But an arrest is different than being charged, and so I think the jury could say, well, the police are saying she's under arrest. Do you think the jury understands the difference? Well, they were delivering on guilt or innocence of two charges, and I believe Detective Vasquez says you're under arrest for one charge and only named one charge. She's ultimately there. They see two charges that they're trying to decide her guilt or innocence on, so maybe they assume she took a lie detector test later, and that's why the second charge came forward. Counsel has two minutes. Again, I think the timing is important because two hours she's sitting in a room, she's denying, denying, denying that the juvenile is at her home. Detective brings up the lie detector test. After two hours sitting in that room, 12 minutes after the lie detector test is first discussed is when she finally admits the juvenile had been at her home. So a jury could make this, you know, and the state didn't make this explicit argument because they didn't bring up the lie detector test, but the Washington case talks about there's a woman being driven to a lie detector test is when she makes the admission, and the state says, well, look, we can believe her admission is more credible because she did it with the specter of a lie detector test hanging above her that she thought she was going to fail. Well, the jury can reach that same conclusion, saying, hey, she, they're talking about a lie detector test. Detective Vasquez might be offering me a lie detector test. Oh, no, I might fail that. And now she finally admits that the juvenile has been at her home after repeated denials for two hours up to that point. And so it was an abuse of discretion for this court to allow that full exhibit to go back to the jury. It was prejudicial. It was ineffective assistance of her counsel to not object to have it go back, and I think that this court can reach this under plain error as well, under either prong, the guard case, actual admission of a lie detector evidence is second prong plain error, and the evidence was close in this case. The jury told us it was close. They delivered it for 10 hours. They sent a question to the court saying, we're at an impasse, and that impasse is reasonable now. So I think the jury viewed this evidence as close, and I think for all those reasons this court should find error and reverse Ms. Dixon's conviction on me in this matter for further proceedings. Are there any other questions at this time, Mr. Honors? No, thank you, Mr. Vasquez. Mr. Oswald. May it please the court? Yes. I'm Mark Oswald, the appellate prosecutor, and I represent the people of the state of Illinois in this matter. The defendant argues that People's Exhibit 10 was improperly given to the jury during deliberations. People's Exhibit 10, of course, was a full video of the police interview of the defendant, and People's Exhibit 10A was short clips from that interview. They were both admitted into evidence, but only 10A was published to the jury, just the clips. The trial judge did provide to the jury all the admitted exhibits, and they had those during deliberations. Exhibit 10 was admitted into evidence without objection, and the defendant did not raise this issue in a post-trial motion. Therefore, the people assert that the defendant has forfeited this issue. The defendant, of course, asked for plain error review, but his entire argument, the defendant's entire argument, is premised on speculation and assumptions. The defendant speculates the jury may have viewed the three-hour long interview of the defendant on Exhibit 10, and in a reply brief, the defendant speculates the jury could have assumed that the defendant took a polygraph, failed the examination, and was subsequently charged in his case. The defendant also claims that the lack of a limiting instruction was prejudicial because the jury had no guidance, where the defendant assumes that the jury reviewed all of the defendant's police interview. Speculation cannot support a reasonable probability that a trial's outcome would have been different. Most importantly about this video, at the end of the interview, Detective Vasquez told the defendant she was being arrested and jailed for criminal sexual assault, and the video shows that no polygraph had been given to the defendant prior to her arrest. The defendant first asserted second-pronged structural error. The defendant cited no authority, showing that just mentioning a polygraph is structural error in case law that does not support that it is. In our brief, the people discussed People v. Jefferson, in which our Supreme Court concluded that the trial judge correctly permitted evidence of the circumstances surrounding the defendant's confession, including her agreement to later take a polygraph. Jefferson shows that the introduction of polygraph evidence at trial is not per se inadmissible or per se structural error. At trial in this case, no one claimed that a polygraph examination had been administered or that the defendant failed one. In a reply brief, the defendant cites Washington to support the proposition  that polygraph is reversible error. But Washington held it was reversible error to admit the polygraph evidence because it was introduced in the state's case in chief and it was used as a sward to advance the state's case. That did not happen in this case. It was not used at all at trial. People also noticed that the defendant says the evidence is closely balanced and basically relies on the length of the deliberations and the fact that they kept requesting different types of evidence, the transcripts and such, and they wanted to review it. But that doesn't prove it was close. It just proves that they had some difference of opinion about the reasonable doubt standard and the standard of evidence to reach that reasonable doubt. People assert that the evidence in this case was not closely balanced. We have a clear statement by Dee Dee, the victim in this case, that our defendant had sexual intercourse with him when he was 14. We have text messages between the two of them. At one point he even says he wanted to have sex with her again and she didn't even respond to that negatively or positively. A lot of I love you type messages between the two of them. So there is nothing close about this evidence in this case. Your Honors, if you have no questions of me, I'm going to stand on my grief for any other argument and ask that you affirm it. Thank you. Your Honors, the State is saying that what we are arguing is pure speculation, but we have the record. All we can rely on in the appeal is the record. The record here is clear that Exhibit 10 was admitted into evidence. The court said all tangible objects are going back to the jury and Exhibit 10 is part of the record that I was able to review and the State was able to review and this court can review as well. It's part of this appellate record. And I think we have to then say that we have to make that assumption that the jury got it and then thus reviewed it. Once it goes back, if this court can agree with our position that the record is clear that Exhibit 10 went back to the jury, I think it doesn't really matter what speculation of what the jury considered. There's lots of case law involving other types of evidence where a full interview, I believe, was sent in a reply brief where there was a full interview of a defendant that went back and there was discussion about his criminal history that was on there. Well, there was no proof that the jury actually watched that, but the court in that case said, well, we've got to assume that if it goes back, we're not going to speculate as to what the jury reviewed as evidence back there. If it went back there, we're going to assume that they took a look at it. And here they had plenty of time to look at it. The State, I suppose, purpose of admitting Exhibit 10 was foundational to getting Exhibit 10A. And when I was a trial attorney, both as a prosecutor and a public defender, there was all types of evidence that you would lay foundationally, fingerprint evidence, for instance, where the arrest card of the defendant was part of that foundational evidence or an arrest record or photographs of a person in a lineup and they showed jail clothing. Those were introduced and admitted to evidence as foundational evidence, never published to the jury, and did not go back to the jury. And in all those cases, in my experience, an explicit reference on the record was this was admitted into evidence and this is not going back to the jury. You see it all the time in appellate records, whether it's a weapon or the controlled substances. There are certain things that, although the jury may even be able to look at, aren't sent back to the jury because the court decides that for whatever reason, safety reasons or whatever, and that's then explicitly stated on the record as to why that exhibit's not going back to the jury during deliberations. Here we don't see that. And I don't think it's – it may be speculation because we don't know what the other – what exactly happened, but I think it's fair to say that even though we don't know explicitly from the record what occurred, thus we only have what the judge said the jury had to have considered thus. And I think that when they considered it – Let me interrupt you. Those cases that you were talking about where a judge decides not to allow that to go back to the jury, okay, now in those cases, was that challenged as an error by the trial judge to not allow that to go back to the jury? In which case specifically are you referring to? The – for instance, if the arrest record of a defendant or whatever, I would – no, I did not see the defense counsel or myself when I had would not object to it because you don't want the jury considering that information. And I think that's what the key – this is not just – this is a piece of evidence that the jury got to consider that wasn't published. It's what's on that piece of evidence that's the important part, the prejudicial portions of it, the lie detector discussion and the discussion with the DCFS caseworker. This is an abuse and neglect case. Again, a jury's left to look at it with no instruction and to be confused as, well, why is DCFS talking with Ms. Dixon? Why is she – she's been accused of sexual misconduct with a student of hers, not her children, yet a DCFS worker is talking about an abuse and neglect case about her own children, bringing up references to domestic violence instances in the past, and the questions are not complete or unclear. And even Ms. Dixon is confused why DCFS is even in the room interviewing her in relation to what the police had argued in speaking with her. And I think, again, the jury left with their own devices, with no instruction, and ample time to review portions of this video many, many times could have said, well, she admitted to the conduct that she admitted to, finally, because she knew she was going to fail a lie detector test, or what is this other possible criminal activity or this other investigation with DCFS? She's a bad person because they're going to try to take her children away from her. There's all kinds of prejudicial reasons that the jury could have considered this evidence that was not published, and for all those reasons, again, we'd ask that this court reverse Ms. Dixon's conviction and remand this matter for further proceedings. Are there any other questions or comments? Thank you, Mr. Slavniak. Mr. Russell, thank you also for your arguments here this morning. This matter will be taken under advisement as previously issued, as previously stated, Judge Litton will be involved in the resolution of this matter, and we're going to be in a brief recess for a panel change before the next case.